Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. Welcome to the third day of oral argument in calendar number 16. The 11th Circuit Court of Appeals and its staff is dedicated to carrying on and discharging our duties to the maximum extent we can during these trying circumstances. And our ability to do that is dependent upon the cooperation of the lawyers who appear before us. And we express our appreciation to them for bearing with us in this new format of argument or unusual format of argument. My instructions or suggestions for them today that will help us out is if they will mention at the beginning of their argument the issues they wish to address if time permits. And after addressing the issue, if they will pause to see if there's any questions from the court. Of course, we may ask questions during the discussion of an issue. And for that purpose, I ask the attorneys to speak in a normal conversational style as opposed to a breakneck speed that we sometimes see and hear. That said, the two cases we have today, the first one is up as United States v. Smith. And we'll hear first from the attorney for the appellant. The appellant is Andre Smith, and the attorney is Mr. Lopez. Good morning. Chief Judge Collins, may it please the court. Bernardo Lopez on behalf of the appellant, Mr. DeAndre Smith. And with the court's permission, I'd like to focus this morning's argument mainly on the issues dealing with Counts 1 and Count 2, the convictions and sentence for those counts. And time permitting, make a brief statement regarding the First Step Act's application. With regard to Counts 1 and 2, I would like to start with the fact that counsel for Mr. Smith in the district court requested a jury instruction. That instruction was substantively correct. It was based on controlling 11th Circuit law. It was not substantively covered in the charge actually delivered to the jury. And the failure to give it seriously impaired Mr. Smith's ability to present an effective defense. That instruction was based on this court's decision in United States v. Diaz. That decision is still controlling law, has not been abrogated by an en banc panel of this court, nor by the United States Supreme Court. In its brief, the government makes the argument that Diaz has somehow been limited or weakened by subsequent decisions. In fact, those decisions, if anything, demonstrate that Diaz is still good controlling law. And also, especially the verbis caia decision makes clear that the district court here committed legal error in not giving the requested instruction. There was another case, Carcione, but that case, the language dealing with Diaz in that case, which was in a footnote, had nothing to do with the holding of Carcione. And under this court's well-established law, it is dicta and need not be followed by this court. Now, the verbis caia, and I'm sorry about the pronunciation, decision 406 F. 3rd, 1324, the 2005 decision from this court, actually supports Mr. Smith's argument that Diaz is, in fact, still controlling law. There, the defendant challenged four different ways in which the government could have proved interstate nexus on a Hobbs Act violation. And I will focus on what was enumerated as number one and number four. Because in number one and number four, those ways, even though the court made some reference to Diaz, it actually applied Diaz. Now, it called it the Collins test, but it really applied Diaz. And it applied Diaz in a way that we think the district court here should have applied. There, this court held with regard to the first way that the government could have proven interstate nexus, that the victim in that case was directly engaged in interstate commerce. And then the loss or potential loss of those paintings directly depleted his assets. That is exactly the language that we propose that the district court instruct a jury on. Counsel, this is Robert Roth. With regard to the Veriscaia case that you're discussing and its application of Carcione in light of subsequent discussion of the Diaz test, didn't we say that though we use this test as a guideline, we note that this circuit has not expressly adopted the Fifth Circuit's test, that being the Collins test? And then in a footnote immediately after that statement stated, despite the fact that the Diaz court used this test, we have continued to express a fact-specific inquiry into the directness and likely extent of any impact on interstate commerce. And then specifically noting Carcione, the footnote you mentioned that was dicta, only eight months after Diaz was published, this court decided Carcione, which reiterated our longstanding precedent that in determining whether there is a minimal effect on commerce, each case must be decided on its own fact, thereby rejecting restrictive reliance on the Collins test. Your Honor, I think the language in Diaz is very clear. This court, without any kind of reservation, said that when the government is prosecuting someone for an attack on an individual, it can happen, but it must prove one of those things. But counsel, there never was the only – the instruction that you proposed stated that it can only prove that the Collins test or the Diaz test was the only way in which a Hobsack robbery can be proved against an individual. It's the only language that seems to be contradicted by at least two of our subsequent cases interpreting what we meant in Diaz, right? Well, Your Honor, there would be a problem with that. Under this court's prior panel precedent rule, to the extent that Verbiskaya or Carcione tried to diminish Diaz or conflict with Diaz, this court must follow Diaz and cannot follow Carcione or Verbiskaya. Counsel, I think you're missing the point of Judge Lutz's question. The exact operative language you're relying on in Diaz says that robbery or extortion perpetrated on individuals are prosecutable under the Hobsack when any one of the following three conditions are met. That is true, but it did not say only when any one of the following three conditions are met, and your jury instruction that you requested did say only. Diaz doesn't say those three conditions are exclusive, and even if it had said that, it didn't have before it a situation in which there was the present circumstances and conditions, and therefore it couldn't have made any law about what happens if a fourth condition or circumstance was met. Your Honor, I'm sorry. Go ahead. Diaz, if the issue with the jury instruction was the only, the district court could have clearly struck it, but we followed pretty much verbatim the language in Diaz. Diaz is controlling law. But if the district court had struck only and followed Diaz, it wouldn't have done you any good. Because what it would have been telling the jury is, oh, by the way, if they had met one of these three conditions, that's enough, and also other conditions can show it. I know. You benefit only if the instruction is given the way you wrote it, which is these three conditions are exclusive, and that's not what Diaz held. Therefore, Diaz couldn't have held that because it didn't have the facts and circumstances of the present case before it. Question, Mark. Yes, sir. I believe at the, because this was filed in a pretrial motion, but it was also renewed at the, when they were going over the jury instructions, and their counsel offered to have the proposed instruction altered so that it would meet any kind of requirements from the court, and the court still denied it. And the court, as the government points in the brief, held that Diaz was not proper law. Diaz is proper law. Diaz is controlling. Not only is Diaz controlling, but Verbas-Gaia would also be controlling and would be consistent with what we are doing here, that if you are prosecuting somebody for an attack on an individual, you must demonstrate that that individual is directly involved in interstate commerce. Diaz held that. Verbas-Gaia held that. I know of no case on the 11th Circuit or Supreme Court where that's varied from that, that has held that an attack on an individual, there's no need to demonstrate that that individual was not directly involved in interstate commerce. But under the law of the circuit regarding jury instructions, the jury instruction was correct, and that substance was not covered by any other charge. Counsel, is the Hobbs Act statute, does it distinguish between robberies of individuals and robberies of corporations or businesses? The language in the statute itself does not. It's the same language, right? It's one language and they don't talk about individuals or businesses. Right. Beyond that. How could it be wrong then for the district court to define it in the same exact way for both and then for the parties to argue that the evidence didn't meet it with regard to one count that dealt with an individual or another count that dealt with a business? I'm having trouble seeing how where the language is the same, the trial court would be required to give separate definitions simply because the count is directed at one kind of person as opposed to another kind of person. That is the established law in this circuit, Your Honor. If you're doing it, attacking an individual, you have to demonstrate that the individual was directly engaged in interstate commerce. That's what we would have argued to the jury if they would have been properly instructed. There was no evidence presented. Mr. Lopez, this is Judge Barkis. I just want to read to you what the Hobbs Act says, actually, in this regard. It provides that whoever, quote, in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce by robbery shall be fined or imprisoned. The language could not have been broader, and the Supreme Court has told us that Congress has spoken in the broadest terms in the Hobbs Act. Unless you can establish, it seems to me, that the language, as Judge Carnes put it to you, was in Diaz was exclusive, what otherwise was wrong with the instruction the judge gave? Your Honor, I think my time has expired. If I could answer Judge Barkis' question. Yes, you can. Go ahead. Thank you, Your Honor. I would point this court to the recent decision from the Supreme Court in Taylor v. United States. There, the defendants were being charged with robbing marijuana growers. They went into a house twice. They robbed these people. They stole their cell phones. They ended up being not any marijuana. If the government's theory is correct, and if what the court just said was correct, then that would have been an easy decision for the Supreme Court to say yes. It's obviously just akin to all our other decisions regarding Hobbs Act. It did not. It specifically said that it's a Hobbs Act violation, but only because the kind of commerce involved there, which was the selling of illegal marijuana, is commerce that's regulated by the federal government. And at the end of that decision, at 2082, that's 136 Supreme Court, at 2082, the Supreme Court specifically said, we do not resolve what the government must prove to establish Hobbs Act robbery where some other type of business or victim is targeted. So if the government's theory is correct and what the court just said, that that jury instruction was proper and would have covered an attack on an individual, there would have been no need for the Taylor decision. But there is a need for the Taylor decision because that general language does not cover what is needed when you have an attack on an individual. And I would just rest on the DS decision and the established law in this court. And I know I'm past my time, but if I could just say one blurb regarding Section 403, with the court's permission. One. Go ahead. Thank you. Very brief. As to that, and I know all the cases from the other circuits, but I would argue that Congress is presumed to know how the words it uses when it legislates have been interpreted by the courts. And we would just point to all the cases that we cited in our brief showing that the language used regarding the imposition of a sentence or when a sentence is imposed or when it's final is sufficiently ambiguous that this court can look to the title and see that, in fact, Section 403 was a clarification of 924C. And I thank the court for the extra time. You're welcome, and we'll give you your full five minutes. And then we'll hear from the Assistant United States Attorney for the Government, Mr. Matson, as representing the appellate. Yes. Good morning, Your Honors. May it please the court, Dan Matson on behalf of the United States. The district court properly instructed the jury as to the Hobbs Act charged in Count I, and the government presented ample evidence at trial to satisfy the low bar for establishing a minimal effect on interstate commerce. I think Your Honors understand our argument, so unless there are any questions, I'll be fairly brief. But I do want to clarify. I'm sorry. I'm sorry. This is Robert Luck. I have a question. This is more of a general question, and then I'll get a little more specific to this case. But in general, we live in a very highly regulated and interdependent economy. In other words, we don't live in 1890 Florida where things are dispersed and there's one local store that deals with all the local people, and there's very little interaction between community one and a community three towns over. You know, people just stay localized. And so my concern is that by allowing these sorts of claims against individual robberies, so when someone is robbed, and puts that person out of commission for any length of time, that it's almost always going to have an effect, at least some minimal effect on interstate commerce. Let me give you an example. Let's say you had a five-person law firm of some sort, and the IT specialist who, and the law firm does both national and international business, and the IT person is robbed on their way home and beaten over the face, losing an eye, putting them out of commission for three weeks, and the law firm is no longer able to get their IT person out to have their computers done, their computers working, and is essentially out of business for two or three weeks as a result, meaning that they're no longer able to do both national and international business. Is that what I just described an effect on interstate commerce, if that's what the evidence proves? Your Honor, I would say likely not, and I think your concern is a valid one. In the context of this case, I think it would be helpful to think about what this case is not before we think about what this case is. This case does not present a scenario where, for instance, Mr. Smith happened to choose a victim at random who just so happens to run a business that operates in interstate commerce, just so happens to, I'm sorry, was there a question? Can I stop you there? Because as I understand it, the elements don't require intent to affect interstate commerce, so it's really not, whether someone intended or not, as I understand the jury instructions, does not really matter, even though I know here that this person was targeted because of the prosul's equipment. I get that. But that's not really the test. The test is simply is there a minimal effect on the business of the country, in other words? Am I right or wrong about that? So I would refer the court to Diaz, where part of the Diaz analysis in terms of whether there was a nexus hinged in the court's word on whether the victim's role with regards to her business was not coincidental. And so that's exactly what we have here. Mr. Smith tracked down, targeted, and ultimately robbed and assaulted, brutally assaulted, the victim here specifically so he could get his hands on her ProTool software that she used in connection with her business. This wasn't a case where Mr. Smith was just looking to… Am I right or wrong about the jury instructions? Don't the jury instructions specifically state that you need not prove an intent to affect commerce as long as it minimally does? Correct. Then what does it matter? In other words, if by my robbery I shut down, let's say, Delta Airlines, not purposely, just that's what I did, I don't think there would be a dispute that that would have an effect on interstate commerce and implicate the Hobbs Act, right? Correct. I mean, there's always a line-drawing exercise to be done in these cases, but in this particular case, consistent with what this court said in Diaz, where it did factor in the fact that the defendant targeted the victim specifically because of the victim's association with the business, your honors don't need to engage in that sort of line-drawing exercise in this particular case. Let me ask you a follow-up question. This is Judge Marcus. Mr. Matzkin, suppose Smith walked up to someone on the street, put a gun in his back, and said, give me your Rolex watch, which I see on your wrist. The guy takes off the watch, hands it to the defendant. Could the defendant be charged under the Hobbs Act with lifting a watch by robbery using a gun? Would that be affecting commerce in any way or degree? I would say he probably would not be charged, because I think in that scenario the – I didn't say whether it would be charged. Could it be charged? Probably not. Why not? Tell me what his distinction is. The distinction is, so in that scenario, the effect on interstate commerce would be too attenuated, as opposed to this case where, again, Mr. Smith targeted the victim specifically so that he could get his hands on a piece of software that she used in the course of her business that was an essential part of her business. The problem that I have is we have said repeatedly in our case law, and it's said pretty much everywhere else, the reason why a minimal effect is all that's required in the micro sense is because Congress was legislating in the macro sense. In other words, if you went into a 7-Eleven store and you stuck up the storekeeper and made off with $50 in the register, even though the amount was very small, that would affect commerce, we have said, because Congress was looking in the broadest sense. If you had 1,000 or 10,000 or 50,000 robberies of a store like that, that would not be de minimis. But I'm asking the question here, what is the pivotal point here? What is this all going on? That it was a business that she was running that was affected? And if it wasn't a business, then it wouldn't qualify? Right. So in this particular case, the evidence shows that the victim was running a business that bought products from other states. So it's undisputed or essentially undisputed that the business operated in interstate commerce. And, again, the victim was targeted specifically for a tool that she used in the course of her business. Well, let's just suppose I used the Pro Tools editing software and had it on me, but I wasn't in business. I did it for myself. And the guy robbed me of it at gunpoint. Would that qualify? Probably not. So the pivotal figure is that that which was taken by force and violence was directly related to a business that was in commerce? Is that the test? The reason I ask the question is, as I look at all of these cases, I cannot find a single case in our circuit where we've discussed at length, and the problem was armed robbery of someone on a street of something that was valuable and that object of itself moved in commerce, but the person was not engaged in commerce in any way. So the key is that person has to be in commerce and the object has to affect the business. In commerce, is that the test? Correct, or at a minimum that should be sufficient for your honors to affirm in this particular case. Is there any case you can cite us to where our court, the old Fifth Circuit, or any other court of appeals has addressed that kind of fact pattern? I don't know that there is, but again, going back to Judge Luck's initial point, we now live in an age where increasingly businesses are changing from brick-and-mortar physical locations to sole proprietorships of the sort that we have here. So this case represents a natural extension of this court's jurisprudence. Let me ask the question one more time in a slightly different way and ask you if it helps to illuminate the distinction you're trying to draw. I'm a grocery store business. I've received a couple of checks. I go to the bank. I cash the checks. They amounted to $400. I put it in my wallet. I walk on the street. Some guy sticks me up and robs me and takes the $400 in my wallet. Was that a Hobbs Act robbery? Did that affect commerce in some way or degree? I would say probably not enough. Again, going back to this court's decision. It came from a business, though. It was the proceeds of four checks that I had received, and I just brought them to the bank, and I cashed them, and I put the money in my pocket. I walked out of the bank, and he robbed me. Correct, but again, going back to this court's decision in Diaz, part of the analysis, at least in that case, hinged on whether the victim's role with regard to the business was purely coincidental. If you were intentionally targeted in a situation where the defendant knew that you worked for this business and that you were going to be walking out with that particular check, that would be a stronger case, and that's exactly what we have here. This is Robert Luck. Let's assume, counsel, that this sort of business in sole proprietorship or individual corporation could have an effect on interstate commerce for some of the reasons you discussed. Is it incumbent on the government to solicit testimony about what effect that would have? In other words, because the pro tools were gone, I was no longer able to purchase $10,000 worth of equipment in interstate commerce, or I was no longer able to conduct my business for the three weeks that I was laid up in the hospital as a result of that because I was targeted for business-related activities. Does some of that evidence have to be there? I don't think so for two reasons. One, I think based on the evidence in this case, the jury could have made a reasonable deduction that that's exactly what happened. How? I've read MD's entire testimony. There's no indication of how long she was in the hospital. They talk about how many surgeries she's had and that she had a hospital stay, but no how she was there. And there's no discussion, as I can tell, about the impact that the robbery had on her business. So as to Your Honor's first point, on cross-examination, the defense counsel made much of the fact that in her interview with authorities, which happened nine-so, just to backtrack for a second, the robbery and assault occurred on December 12th. She was interviewed by authorities on December 21st, and on cross, defense counsel pointed out some reported inconsistencies between her statement at that interview compared to her testimony at trial. And she explained several times that at the time of her interview with authorities, again, nine days after the robbery, she was essentially bedridden, she was sedated, she was highly medicated, she really didn't know what was going on. And she said that that state essentially continued until her follow-up surgery, which happened on January 2nd. So given those facts, a reasonable jury could well have assumed that the robbery prevented her from going about her business in the usual way. But the jury would have to make that inference. That is not – you agree with me there was no testimony about what both financial and substantive impact, at least direct testimony about what financial or substantive impact the robbery had on her sole proprietorship? I do agree. Thank you. I do agree, and of course this court views the evidence in the light most favorable to the government and to the verdict. To address the other part of your question, though, my understanding in cases with corporate victims, those victims don't typically put on testimony about the likelihood of lost revenue, for instance. Yes, but I think Judge Marcus' questions go to that, which is if 7-Eleven is out 50 bucks or a local grocery store is out $400, we know the financial impact, $50 or $400, right? Fair enough. But here, because it was a piece of intellectual property that was taken that she otherwise has a license to and appears to have still been able to use after this, and there's no testimony about how much financial impact that otherwise had, how can we know what the diminution is, both to the business directly or the effect of the robbery? Well, for instance, I mean, there could well be a scenario where the charges for attempted Hobbs Act robbery rather than just Hobbs Act robbery where there would be no actual financial impact because the offense is never actually committed. And in that situation, again, like here, the jury would be able to make the inference in terms of what the impact would have been had the crime succeeded. Right, but even in that situation, wouldn't there have to be testimony that if they had been successful and they took my pro tools, I would have been out $1 million worth of business, something like that? I mean, I think, again, at a minimum, I think the jury logically could have inferred that the victim here would need to repurchase the pro tool software, which she testified costs $500 or $1,300 for a license. With that being said, I'm happy to address any other questions that your Honors have. If there are none, we ask that you affirm the disreport in all respects. Thank you, Mr. Madsen. Thank you. Mr. Lopez, five minutes. Thank you. The rule of practice is that where the appellee addresses only one issue and its argument, you're confined to reply to that one issue. So you're still on the commerce clause. Yes, sir. I'll stay away from the first step back. To address Judge Marcus's concern with this court, and this is more on sufficiency than on the jury instruction, but still goes to the same point on commerce, the line that this court has drawn, Diaz-Verbas-Gaia, is that the victim has to be directly engaged in interstate commerce. Here there was no evidence, so on the sufficiency issue, there was no evidence that the victim here was directly engaged in interstate commerce, and really there is no evidence here that there was any kind of effect on interstate commerce. And to go to a point that was brought up by Judge Luck, there actually was no evidence that the pro tools were taken from her completely. In other words, there's some evidence that some of the licenses or the I-locks, I can't believe how she said it, were on the thumb drive, but her computer was somewhere else. She had already stored a computer at her friend's. There was no evidence from the government saying that she did not have the pro tools on the computer, which is the logical thing, or that the robbery completely took the pro tools away from her. But again, the delineation, and to keep, to ensure that federal crime stays federal and state crime stays state crime, what this court has said is you have to demonstrate that the victim was directly involved in interstate commerce. The victims in Diaz, there were actually three sets of victims, all of them. This court made a point of noting that they were directly engaged in interstate commerce. In Verbis Calla, this court again made a point of noting that the victim was in fact engaged in interstate commerce, and that is how the proof on the interstate nexus was sufficient in those cases. Let me ask you this, Mr. Lopez. Let's assume that the evidence was that the thumb drive, which it was clearly established the defendant stole. The thumb drive was never recovered. That was established. And suppose the evidence was that she had to purchase another thumb drive. Same thing on the software. Let's suppose she had to purchase more software. Would the fact that she had to make purchases in interstate commerce as a result of the robbery be sufficient to establish the nexus? Under Diaz and Verbis Calla, Your Honor, I would say no, that there would still have to be a demonstration that the victim was engaged in interstate commerce, and that's how you have a robbery on an individual affecting interstate commerce to make it into a HOPS Act, to make it into a federal crime. Now, what happened to Ms. Brown was terrible. It was a violent act. It just wasn't a federal crime. And, again, the established law in this circuit is whether the district court instructed it or not, the jury would have to find that the victim was directly involved in interstate commerce. And other circuits have said the same thing. The Second Circuit, this is United States v. Perota, 313 F. 3rd at 33. That's a 2002 Second Circuit decision. There the victim worked for a company that was engaged in interstate commerce, but the Second Circuit said that the nexus was insufficient because there was no evidence heard by the jury proving that the victim had a direct involvement in interstate commerce, or that the victim was involved in interstate commerce. How is that consistent with the Supreme Court saying it just has to have a minimum impact, a minimal impact on interstate commerce? Again, I would point the Court to the Taylor decision from the Supreme Court. If the government's theory is correct, that if somebody buying something off the Internet and then just having a business that is completely intrastate was sufficient, in that case, the victims in that case had their cell phones stolen, cell phones that they bought in interstate commerce that they used for their business of selling marijuana. If that was sufficient, then the Supreme Court's decision in Taylor would have been easy. But the Supreme Court went out of its way to say that the reason that that violates the Hobbs Act is because the type of commerce, selling marijuana, is a type of commerce that is regulated by the federal government, and that's what makes a federal offense and makes it a Hobbs Act violation. I see I'm almost out of time, Your Honor, and I'd just like to take that time, actually, on behalf of Mr. Smith, to thank the Court for taking the extraordinary steps to make sure that this case was morally argued, and I thank the Court for its time. I'll let the Court have any other questions. I don't believe we do. Thank you, Mr. Lopez. We'll take that case under submission.